## UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LEON J. HORNE** | **CIVIL ACTION** |
| **versus** | **NO. 09-5509** |
| **N. BURL CAIN, WARDEN** | **SECTION: "R" (3)** |

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

### I.  Procedural History

Petitioner, Leon J. Horne, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana.  On October 13, 1998, he was convicted of two counts of

aggravated criminal damage to property.[1]  On April 22, 1999, the state district court found him to be a third offender and imposed a single sentence of life imprisonment without benefit of parole, probation, or suspension of sentence.[2]

On the first direct appeal, the Louisiana First Circuit Court of Appeal noted that the trial court erred in imposing a single sentence, holding:

> [T]he instant sentence and habitual offender adjudication(s) must be vacated and remanded to the trial court for resentencing on both convictions with the adjudication and sentence as a habitual offender to be limited to one of the two convictions.  See **State ex rel. Porter v. Butler**, 573 So.2d [1106, 1109 (La. 1991)].  Thereafter, the trial court shall impose two separate sentences, whether one or more convictions are being enhanced pursuant to L.S.A.-R.S. 15:529.1.  After resentencing, defendant may perfect a new appeal.  **State v. Soco**, 94-1099 (La. App. 1 Cir. 6/23/95), 657 So.2d 603.[3]

On June 20, 2001, the state district court held a hearing but did not retry petitioner on the habitual offender charge.  Rather, relying on the prior adjudication, the court merely resentenced petitioner as a habitual offender on Count I to a term of life imprisonment without benefit of parole, probation, or suspension of sentence and resentenced him on Count II to a term of fifteen years imprisonment.[4]

---

[1]  State Rec., Vol. II of IV, transcript of October 13, 1998, p. 77; State Rec., Vol. I of IV, minute entry dated October 13, 1998; State Rec., Vol. I of IV, jury verdict forms.

[2]  State Rec., Vol. II of IV, transcript of April 22, 1999; State Rec., Vol. I of IV, minute entry dated April 22, 1999; State Rec., Vol. I of IV, Reasons for Judgment dated April 27, 1999.

[3]  State v. Horne, 768 So.2d 228, 229 (La. App. 1st Cir. 2001) (No. 99 KA 2192); State Rec., Vol. I of IV.

[4]  State Rec., Vol. II of IV, transcript of June 20, 2001; State Rec., Vol. I of IV, minute entry dated June 20, 2001; State Rec., Vol. I of IV, Reasons for Judgment dated June 26, 2001.

On the second direct appeal, the Louisiana First Circuit Court of Appeal affirmed petitioner's convictions but found that the trial court had once again failed to properly sentence him. The Court of Appeal explained:

> Upon remand, the state failed to file a new or amended habitual offender bill in this matter specifying which of the two counts it was seeking to enhance pursuant to the habitual offender law, LSA-R.S. 15:529.1. Additionally, no new habitual offender hearing was held, and the record fails to reflect that the defendant stipulated as to any habitual offender status after being duly cautioned as to his rights. Rather, the trial court resentenced the defendant "[i]n accordance with its previous finding that the defendant is a third felony offender." This court, however, specifically vacated the previous habitual offender adjudication in this matter. **Horne**, 768 So.2d at 229. Accordingly, the sentences imposed on counts 1 and 2 upon resentencing are vacated, and this matter is remanded to the trial court with the following instructions.
>
> Should the state again seek habitual offender enhancement, it must file a new or amended habitual offender bill of information specifying which one of the two convictions it seeks to enhance, since only one of them can be enhanced. Thereafter, the state and the trial court must comply with the procedures set forth in LSA-R.S. 15:529.1(D) before the defendant is adjudged a habitual offender. In any event, regardless of whether the state seeks habitual offender enhancement, the trial court must again impose two separate sentences for these two convictions and should specify which of these two sentences is being imposed pursuant to the habitual offender enhancement, if applicable. After resentencing, the defendant may perfect a new appeal limited to sentencing issues.[5]

The Louisiana Supreme Court then denied petitioner's related writ application on November 14, 2003.[6]

---

[5] State v. Horne, No. 2002 KA 1904, at pp. 6-7 (La. App. 1st Cir. Mar. 28, 2003) (footnote omitted) (unpublished); State Rec., Vol. II of IV.

[6] State v. Horne, 858 So.2d 417 (La. 2003) (No. 2003-KO-1178).

On November 9, 2004, the state district court held a new sentencing hearing. Unfortunately, the court was under the mistaken belief that there was no need to resentence petitioner as to Count II, despite the Court of Appeal's clear directive to the contrary. Based on that misunderstanding, the state district court again found petitioner to be a multiple offender with respect to Count I and resentenced him as such on that count to a term of life imprisonment without benefit of parole, probation, or suspension of sentence.[7]  Petitioner was not resentenced on Count II.

On the third direct appeal, the Louisiana First Circuit Court of Appeal affirmed the habitual offender adjudication and the sentence on Count I but once again remanded the matter to the state district court for resentencing on Count II.[8]  The Louisiana Supreme Court then denied petitioner's related writ application on October 13, 2006.[9]  Despite that judgment, the state notes in its response in this proceeding that petitioner has never been resentenced on Count II.[10]

_____

[7]  State Rec., Vol. II of IV, transcript of November 9, 2004; State Rec., Vol. I of IV, minute entry dated November 9, 2004.

[8]  State v. Horne, No. 2005 KA 0468 (La. App. 1st Cir. Dec. 22, 2005) (unpublished); State Rec., Vol. III of IV.

[9]  State v. Horne, 939 So.2d 355 (La. 2006) (No. 2006-KO-0816); State Rec., Vol. III of IV. While that writ application was pending, petitioner returned to state district court to file a motion to correct illegal sentence on June 26, 2006. State Rec., Vol. III of IV. That motion was denied on July 17, 2006. State Rec., Vol. III of IV, Order dated July 17, 2006.

[10]  See Rec. Doc. 18, p. 2.

Thereafter, on or about January 4, 2008, petitioner filed with the state district court an application for post-conviction relief.[11]  That application was denied on February 21, 2008.[12]  His related writ applications were then denied by the Louisiana First Circuit Court of Appeal on July 21, 2008,[13] and by the Louisiana Supreme Court on May 29, 2009.[14]

While those proceedings were still ongoing, petitioner filed with the state district court another application for post-conviction relief on March 23, 2009.[15]  That application was denied on June 15, 2009.[16]  According to information obtained by this Court from the state courts, his related writ application was then denied by the Louisiana First Circuit Court of Appeal on October 26, 2009, and the matter is currently pending before the Louisiana Supreme Court.

---

[11]  State Rec., Vol. III of IV.  Federal *habeas* courts are apply Louisiana's "mailbox rule" when determining the filing date of a state court filing, and therefore such a document is considered "filed" as of the moment the prisoner "placed it in the prison mail system." Causey v. Cain, 450 F.3d 601, 607 (5th Cir. 2006).  Petitioner's application was undated, and he offers no indication when it was mailed.  However, the application was stamped as filed by the state district court on January 4, 2008, and petitioner acknowledges that he did in fact file it on that date.  Rec. Doc. 19, p. 3.

[12]  State Rec., Vol. III of IV, Order dated February 21, 2008.

[13]  State v. Horne, No. 2008 KW 0808 (La. App. 1st Cir. July 21, 2008) (unpublished); State Rec., Vol. III of IV.

[14]  State *ex rel.* Horne v. State, 9 So.3d 161 (La. 2009) (No. 2008-KH-2203); State Rec., Vol. III of IV.

[15]  State Rec., Vol. III of IV.

[16]  State Rec., Vol. III of IV, Order dated June 15, 2009.

In the interim, on July 14, 2009, petitioner filed the instant federal application for *habeas corpus* relief with respect to his conviction on Count I,[17] claiming that he received ineffective assistance of counsel.[18]  On August 31, 2009, he filed a motion to amend his federal application to add a claim challenging the constitutionality of La.Rev.Stat.Ann. § 15:308.  He additionally requested that these proceedings be stayed and held in abeyance while he exhausts his state court remedies with respect to that new claim.[19]

## II.  Motion to Amend and Stay

As noted, petitioner has filed a motion to amend his federal application to assert a claim challenging La.Rev.Stat.Ann. § 15:308.  He notes that § 15:308 provides a mechanism for certain state prisoners to apply to the Louisiana Risk Review Panel for a reduction in their sentences.[20]  Petitioner contends that he is ineligible to make an application to the Louisiana Risk

---

[17]   The state asserts that petitioner is challenging only his conviction on Count I.  Rec. Doc. 17, p. 2.  In his "Traverse," petitioner does not contest that assertion.  Rec. Doc. 19.  Moreover, the assertion would appear to be correct, in that petitioner apparently has never been resentenced on Count II.  Absent resentencing, the conviction on Count II is not yet even final.  Burton v. Stewart, 549 U.S. 147, 156 (2007) ("Final judgment in a criminal case means sentence.  The sentence is the judgment."); Gifford v. Wilkinson, Civ. Action No. 07-1063, 2009 WL 4015428, at *5 (E.D. La. Nov. 16, 2009); Pete v. Tanner, Civ. Action No. 09-3403, 2009 WL 2949984, at *2 (E.D. La. Sept. 11, 2009).  Accordingly, a *habeas* petition challenging that conviction would be premature.

[18]   Rec. Doc. 1.

[19]   Rec. Doc. 9.

[20]   That statute provides:

A. (1) The legislature hereby declares that the provisions of Act No. 403 of the 2001 Regular Session of the Legislature provided for more lenient penalty provisions for certain enumerated crimes and that these penalty provisions were to be applied prospectively.

(2) The legislature hereby further declares that Act No. 45 of the 2002 First

Review Panel due to limitations set forth in La.Rev.Stat.Ann. § 15:574.22.[21]   He argues that the provisions of § 15:308 regarding applications to the Louisiana Risk Review Panel violate La. Const. Art. 4, § 5(E), which he argues confers upon the Louisiana Pardon Board the exclusive authority to make favorable recommendations concerning the commutation of sentences.

---

Extraordinary Session of the Legislature revised errors in penalty provisions for certain statutes which were amended by Act No. 403 of the 2001 Regular Session of the Legislature and that these revisions were to be applied retroactively to June 15, 2001, and applied to any crime committed subject to such revised penalties on and after such date.

     B. In the interest of fairness in sentencing, the legislature hereby further declares that the more lenient penalty provisions provided for in Act No. 403 of the 2001 Regular Session of the Legislature and Act No. 45 of the 2002 First Extraordinary Session of the Legislature shall apply to the class of persons who committed crimes, who were convicted, or who were sentenced according to the following provisions: R.S. 14:56.2(D), 62.1(B) and (C), 69.1(B)(2), 70.1(B), 82(D), 91.7(C), 92.2(B), 92.3(C), 106(G)(2)(a) and (3), 106.1(C)(2), 119(D), 119.1(D), 122.1(D), 123(C)(1) and (2), 352, and 402.1(B), R.S. 15:529.1(A)(1)(b)(ii) and (c)(ii), 1303(B), and 1304(B), R.S. 27:262(C), (D), and (E), 309(C), and 375(C), R.S. 40:966(B), (C)(1), (D), (E), (F) and (G), 967(B)(1), (2), (3), and (4)(a) and (b), and (F)(1), (2), and (3), 979(A), 981, 981.1, 981.2(B) and (C), and 981.3(A)(1) and (E), and Code of Criminal Procedure Art. 893(A) prior to June 15, 2001, provided that such application ameliorates the person's circumstances.

     C. Such persons shall be entitled to apply to the Louisiana Risk Review Panel pursuant to R.S. 15:574.22.

La.Rev.Stat.Ann. § 15:308.

[21] Certain categories of prisoners are not eligible for panel review, including "[a] person sentenced as a habitual offender under R.S. 15:529.1 where one or more of the crimes for which the person was convicted and sentenced under R.S. 15:529.1 is a crime of violence defined or enumerated in R.S. 14:2(B)."   La.Rev.Stat.Ann. § 15:574.22(G)(4).   Based on petitioner's allegations, he apparently falls within that category of persons.

Petitioner acknowledges that this proposed claim is not yet exhausted because it is still currently pending before the Louisiana Supreme Court.[22]  However, he requests that this Court stay these federal proceedings until the Louisiana Supreme Court rules on his pending writ application, thereby exhausting his state court remedies with respect to the proposed claim.[23]

---

[22]   A petitioner must exhaust his exhaust his remedies in state court before seeking *habeas corpus* relief from the federal courts.  28 U.S.C. § 2254(b)(1)(A).  "To exhaust, a petitioner must have fairly presented the substance of his claim to the state courts."  Wilder v. Cockrell, 274 F.3d 255, 259 (5th Cir. 2001) (internal quotation marks omitted).  Generally, the exhaustion requirement is satisfied when the grounds urged in a federal petition were previously presented to the state's highest court in a procedurally proper manner according to state court rules.  Dupuy v. Butler, 837 F.2d 699, 702 (5th Cir. 1988).

[23]   In Rhines v. Weber, 544 U.S. 269 (2005), the United States Supreme Court explained that, in some circumstances, it is appropriate for a federal district court to stay *habeas corpus* proceedings.  Rhines dealt with a petitioner who had filed a "mixed petition" containing both exhausted and unexhausted claims.  The petitioner wanted to stay the federal proceedings, return to state court to pursue his unexhausted claims, and then come back to federal court for review of his perfected petition.  The Supreme Court noted that the entry of a stay is permissible in such proceedings in limited circumstances but noted:

> Staying a federal habeas petition frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings.  It also undermines AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition.  Cf. Duncan [v. Walker, 533 U.S. 167, 180 (2001)] ("[D]iminution of statutory incentives to proceed first in state court would ...  increase the risk of the very piecemeal litigation that the exhaustion requirement is designed to reduce").
>
>        For these reasons, stay and abeyance should be available *only in limited circumstances.*  Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court.  Moreover, even if a petitioner had good cause for that failure, *the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless.*  Cf. 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas

The state opposes petitioner's motion to amend the petition and stay the proceedings.[24]  The Court finds that petitioner's motion should indeed be denied for the following reasons.

As an initial matter, the Court notes that the claim petitioner seeks to add is time-barred.  To be timely, a claim asserted in an amended petition must relate back to a claim in a timely filed petition or the amendment must itself be filed within the one-year federal limitations period.  Mayle v. Felix, 545 U.S. 644 (2005); Parker v. Cain, Civil Action No. 07-8856, 2008 WL 4534096, at *2 n.17 (E.D. La. Oct. 7, 2008).  As explained in detail later in this opinion, petitioner's deadline for filing for federal *habeas corpus* relief was June 8, 2009.  Because both his original application, filed July 14, 2009, and his motion to amend, filed August 31, 2009, were filed after that date, the proposed amendment is untimely.

Moreover, even if the claim were not time-barred, it is not cognizable for two reasons.  *Habeas corpus* relief may be granted only upon a showing that the petitioner is "in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Here, petitioner's claim challenging § 15:308 does not in any way challenge *the validity of the state court judgment pursuant to which he is confined*.  It does not challenge the legality of his conviction, his habitual offender

corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State").

Rhines, 544 U.S. at 277 (emphasis added).

[24]  Rec. Doc. 18.

adjudication, *or* his enhanced sentence or ask that those judgments be invalidated; rather, the claim merely seeks a declaration that he should be eligible to file for executive leniency under § 15:308. That relief cannot be granted under § 2254. Second, in any event, petitioner's proposed claim is that La.Rev.Stat.Ann. § 15:308 violates La. Const. Art. 4, § 5(E). That claim is based on *state* constitutional law. Federal *habeas corpus* relief may not be granted to remedy mere errors of state law. Engle v. Isaac, 456 U.S. 107, 119 (1983); Turner v. Thaler, No. A-08-CA-811, 2009 WL 3838847, at *7 (W.D. Tex. Nov. 13, 2009); Ratcliff v. Cain, Civ. Action No. 05-927, 2007 WL 2318877, at *4 (E.D. La. Aug. 13, 2007).

Therefore, even if the proposed claim were exhausted, it is plainly meritless for federal *habeas corpus* purposes. Accordingly, it would be futile to allow petitioner to add the claim, and a related stay would be unwarranted and would clearly frustrate the AEDPA's objective of encouraging finality. Accordingly, petitioner's motion should be denied.

## III. Timeliness

The state also argues that petitioner's federal application is untimely. The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") generally requires that a petitioner bring his Section 2254 claims within one (1) year of the date on which his underlying criminal judgment becomes "final." Under the AEDPA, a judgment is considered "final" upon the expiration of time for seeking direct review. 28 U.S.C. § 2244(d)(1)(A).[25]

---

[25]   Although § 2244(d)(1) has alternative provisions providing for other events which can trigger the commencement of the statute of limitations, the alternative provisions are not applicable in the instant case.

As noted, the Louisiana Supreme Court rejected petitioner's writ application on his third and final direct appeal on October 13, 2006. Therefore, under § 2244(d)(1)(A), his conviction on Count I became "final" no later than January 11, 2007, when his period expired for seeking a writ of certiorari from the United States Supreme Court. See Roberts v. Cockrell, 319 F.3d 690, 694 (5th Cir. 2003); Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999); Chester v. Cain, Civ. Action No. 01-1958, 2001 WL 1231660, at *3-4 (E.D. La. Oct. 15, 2001); see also U.S. Sup. Ct. R. 13(1). Accordingly, his period for seeking federal *habeas corpus* relief commenced on that date and expired one year later, unless that deadline was extended through tolling.

The Court first considers statutory tolling. The AEDPA provides that the statute of limitations is tolled for the period of time during which a properly filed application for state post-conviction relief or other collateral review attacking a conviction or sentence is pending in state court. 28 U.S.C. § 2244(d)(2).

After three hundred fifty-seven (357) days elapsed, petitioner tolled the federal limitations period on January 4, 2008, by filing a post-conviction application with the state district court. Tolling then continued uninterrupted for the duration of the post-conviction proceedings, so long as he sought supervisory review in a timely manner. Grillette v. Warden, Winn Correctional Center, 372 F.3d 765, 769-70 (5th Cir. 2004). The state court record does not reflect that petitioner's related writ applications were untimely filed with the Louisiana Fifth Circuit Court of

Appeal and the Louisiana Supreme Court.[26]  Therefore, tolling ceased with respect to that first post-conviction application when the Louisiana Supreme Court denied relief on May 29, 2009.[27]

As noted, petitioner also filed a second post-conviction application on March 23, 2009.  The question is whether petitioner is entitled to tolling with respect to that application and the related proceedings, which, as noted, are still ongoing.  The state argues that this second application did not toll the limitations period because it was not truly "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment" as required for tolling under 28 U.S.C. § 2244(d)(2).  For the following reasons, this Court agrees.

Although petitioner's second application was filed on the uniform form to be used by prisoners seeking post-conviction relief, it was not a proper post-conviction application.  As noted by the state district court in its denial, petitioner's application did not state a ground for relief recognized under La.C.Cr.P. art. 930.3, which provides:

---

[26]   In its response in this proceeding, the state contends that the Louisiana Supreme Court denied that application as untimely.  That contention is unsupported by the record.  The state district court denied the post-conviction application pursuant to La.C.Cr.P. arts. 930.2 and 930.3, *not* the timeliness provisions of article 930.8.  State Rec., Vol. III of IV, Order dated February 21, 2008.  Moreover, the Louisiana First Circuit Court of Appeal and the Louisiana Supreme Court then simply rejected the related writ application by issuing one-word denials without assigning additional reasons.  State v. Horne, No. 2008 KW 0808 (La. App. 1st Cir. July 21, 2008) (unpublished); State Rec., Vol. III of IV; State *ex rel.* Horne v. State, 9 So.3d 161 (La. 2009) (No. 2008-KH-2203); State Rec., Vol. III of IV.  There is simply no basis to conclude that the Louisiana Supreme Court's judgment was based on timeliness considerations.

[27]   A petitioner receives no additional tolling credit for the period during which he could have sought review by the United States Supreme Court with respect to the denial of post-conviction relief.  Lawrence v. Florida, 549 U.S. 327, 332 (2007); Ott v. Johnson, 192 F.3d 510, 512 (5th Cir. 1999).

If the petitioner is in custody after sentence for conviction for an offense, relief shall be granted only on the following grounds:

(1) The conviction was obtained in violation of the constitution of the United States or the state of Louisiana;

(2) The court exceeded its jurisdiction;

(3) The conviction or sentence subjected him to double jeopardy;

(4) The limitations on the institution of prosecution had expired;

(5) The statute creating the offense for which he was convicted and sentenced is unconstitutional; or

(6) The conviction or sentence constitute the ex post facto application of law in violation of the constitution of the United States or the state of Louisiana.

(7) The results of DNA testing performed pursuant to an application granted under Article 926.1 proves by clear and convincing evidence that the petitioner is factually innocent of the crime for which he was convicted.

Rather, the second application merely challenged La.Rev.Stat.Ann. § 15:308, which petitioner argued was unconstitutional because its provisions, when read in conjunction with La.Rev.Stat.Ann. § 15:574.22, prevented him from seeking leniency from the Louisiana Risk Review Panel.  Because the application did not in any way challenge the legality of petitioner's conviction, his habitual offender adjudication, or his enhanced sentence, it was not "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment."  See Moore v. Cain, 298 F.3d 361, 367 (5th Cir. 2002) (noting that "the key inquiry is whether [the] application sought 'review' of the judgment pursuant to which he is incarcerated"; holding that an application for a writ of mandamus did not qualify because it merely "sought an order directing the trial court

to perform its duty" and "did not challenge the judgment pursuant to which [the prisoner] is incarcerated"); see also Alexander v. Secretary, Department of Corrections, 523 F.3d 1291 (11th Cir. 2008) (a motion for leniency not challenging the lawfulness of the sentence does not qualify); Hartmann v. Carroll, 492 F.3d 478 (3rd Cir. 2007) (same); Malcom v. Payne, 281 F.3d 951 (9th Cir. 2002) (petitions for executive clemency do not qualify); Walkowiak v. Haines, 272 F.3d 234, 238 (4th Cir. 2001) (motion for reduction of sentence does not qualify, in that it does not allege a legal error with the underlying judgment but is instead merely a plea for leniency); but see Kholi v. Wall, 582 F.3d 147 (1st Cir. 2009), *petition for cert. filed*, 78 U.S.L.W. 3447 (U.S. Jan. 19, 2010) (No. 09-868).

Because petitioner's second state application did not entitle him to tolling credit, and because he filed no other subsequent state applications, statutory tolling ceased on May 29, 2009, when the Louisiana Supreme Court denied relief in the original post-conviction proceedings.

The Court, however, must also consider whether petitioner is entitled to equitable tolling. The United States Fifth Circuit Court of Appeals has held that the AEDPA's statute of limitations can, in rare and exceptional circumstances, also be equitably tolled. See Davis v. Johnson, 158 F.3d 806, 811 (5th Cir. 1998). However, "[e]quitable tolling applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." Coleman v. Johnson, 184 F.3d 398, 402 (5th Cir. 1999) (internal quotes and citations omitted).   Petitioner bears the burden of proof to establish entitlement to equitable tolling. Alexander v. Cockrell, 294 F.3d 626, 629 (5th Cir. 2002).

In his "Traverse" filed in this proceeding, petitioner contends that he could not file his federal application sooner because the prison law library was closed "for at least twelve (12) days" in June 2009.[28]  As a result, his inmate counsel substitute was unable to perform necessary research and to prepare the federal application until on or about June 25, 2009.  Thereafter, petitioner experienced an additional delay while his documents were copied for submission to the Court.

Petitioner's allegations are insufficient to warrant equitable tolling.  First, other than his own self-serving and uncorroborated allegations in the unverified "Traverse," petitioner offers no evidence of the purported library closure in June 2009.  Moreover, because petitioner had only eight (8) days remaining of the limitations period after the Louisiana Supreme Court's judgment of May 29, 2009, he had only until June 8, 2009,[29] to file his federal application.  Here, he does not even allege that any of the twelve days the library was purportedly closed during June were during the first eight days of that month; if not, the closure would obviously be irrelevant because any impediment arising after the deadline expired would not affect the timeliness of his petition.  Moreover, in any event, because the federal application was merely a repetition of the claim previously filed in the state courts in the original post-conviction proceedings, additional research

---

[28]   Rec. Doc. 19, p. 4.  Petitioner actually states that the closure was in June 2008; however, from the context, it appears he means 2009.

[29]   Because the eighth day, June 6, 2009, was a Saturday, the limitations period was extended through the following Monday.  See Flanagan v. Johnson, 154 F.3d 196, 202 (5th Cir. 1998) ("We hold that [Fed.R.Civ.P.] 6(a) applies to the computation of the one year limitation period in § 2244(d) of AEDPA."); Fed.R.Civ.P. 6(a) (if the last day of an applicable period is a Saturday, a Sunday, a legal holiday, or a day when the clerk's office is inaccessible, the period runs until the end of the next day that is not one of those days).

was unnecessary and the purported library closure would not have substantially affected petitioner's ability to timely file in federal court.  See Marsh v. Soares, 223 F.3d 1217, 1221 (10th Cir. 2000) (rejecting claim for equitable tolling based upon fifteen-day closure of prison library where the claims being asserted were the same as presented in a prior *habeas* petition.); Bunley v. Jones, Civ. Action No. 06-2941, 2009 WL 2868427, at *3 (E.D. La. Aug. 11, 2009) (Moore, M.J.), adopted as modified, 2009 WL 2868424 (E.D. La. Aug. 31, 2009) (McNamara, J.); see also Rood v. Quarterman, Civ. Action No. H-09-1923, 2009 WL 2018991, at *2 (S.D. Tex. July 10, 2009) ("[P]etitioner's allegations of *pro se* status and limited access to law libraries and other resources are incident to ordinary inmate status, are not extraordinary circumstances, and do not constitute grounds for statutory or equitable tolling of limitations."); Jones v. King, Civ. Action No. 3:05-CV-356, 2006 WL 1674302, at *4 (S.D. Miss. June 16, 2006) ("[D]enial of access to a law library ... [is] not such [a] 'rare and exceptional circumstance[]' that warrant[s] equitable tolling of the AEDPA limitations period.").[30]

Because petitioner is entitled to neither further statutory tolling nor equitable tolling, his federal application for *habeas corpus* relief had to be filed on or before June 8, 2009, in order to be timely.  His federal application was not filed until July 14, 2009,[31] and it is therefore untimely.

---

[30]   To the extent that petitioner is arguing that the purported closure of the law library was a state-created impediment to excuse delayed filing pursuant to 28 U.S.C. § 2244(d)(1)(B), that argument fares no better.  If the purported closure was insufficient to warrant equitable tolling, it would be incongruous to find that it was nevertheless sufficient to trigger the provisions of § 2244(d)(1)(B). See Robinson v. Johnson, No. 00-10011, 2001 WL 1066893, at *2 (5th Cir. Aug. 14, 2001).

[31]   "A prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing to the district court."  Roberts v. Cockrell, 319 F.3d 690, 691 n.2 (5th Cir. 2003). Petitioner signed his federal application on July 14, 2009; therefore, that it the earliest date it could have been submitted to prison officials for mailing.

Nevertheless, out of an abundance of caution, the undersigned also notes that, in the event the United States District Judge determines that the federal application was timely filed, petitioner's claim is still subject to dismissal on the merits for the following reasons.

IV.  Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact.  Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2).  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).   The United States Supreme Court has noted:

§ 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning.  A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.   The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we

> stressed in <u>Williams[ v. Taylor</u>, 529 U.S. 362 (2000)] that an
> unreasonable application is different from an incorrect one.

<u>Bell v. Cone</u>, 535 U.S. 685, 694 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); <u>see also</u> 28 U.S.C. § 2254(e)(1); <u>Hill</u>, 210 F.3d at 485.

## V.  Facts

In the second direct appeal, the Louisiana First Circuit Court of Appeals summarized the facts of this case as follows:

> On September 30, 1997, at approximately 3:00 a.m., two women informed the St. Tammany Parish Sheriff's office that the defendant, while armed with a sawed-off shotgun, had stolen a vehicle from them.
>
> St. Tammany Parish Sheriff's Detective James Franklin was involved in the ensuing pursuit of the defendant.  As Detective Franklin turned from Fremeaux Street to Lindburg Street, he saw a police vehicle get hit.  The police vehicle (police vehicle #1) was in its proper lane of travel, while the vehicle driven by the defendant was in the police vehicle's lane of travel.  The vehicles struck each other on their driver's side doors.  After striking police vehicle #1, the defendant continued to accelerate, came around a curve, and drove in Detective Franklin's lane of travel in a head-on collision path with Detective Franklin. Detective Franklin testified, "at the last second, I turned left to avoid a head-on collision and he turned right and our vehicles collided." The defendant's vehicle was accelerating at the time of the collision with Detective Franklin's vehicle (police vehicle #2).  Following the collision with police vehicle #2, the vehicle driven by the defendant came to rest in a ditch.  The defendant exited the vehicle and fled on foot.  He was captured after being tackled by police officers.  A shotgun, partially wrapped in a black plastic bag, and a change of clothes were recovered from the

front seat of the vehicle driven by the defendant, and a shotgun shell and a "crack pipe" were recovered from the defendant's pocket.

St. Tammany Parish Sheriff's Deputy Chris Bell was also involved in the pursuit of the defendant. Deputy Bell activated the emergency lights and siren on his vehicle in an attempt to pull over the vehicle being driven by the defendant. The defendant responded by accelerating the vehicle he was driving and attempting to strike a civilian vehicle exiting a McDonald's restaurant, "in an attempt to hit [the civilian vehicle] or to make it go into the ditch so that [the police] would have to stop the pursuit and not pursue [the defendant] anymore." During the ensuing pursuit, Deputy Bell saw the defendant reach down in his vehicle and lift up a shotgun barrel. Deputy Bell radioed his backup, "Let's back off. I think he's getting ready to shoot at us." Thereafter, the defendant drove the vehicle he was operating at an approaching Slidell Police Department vehicle in an attempt to strike it. The Slidell Police Department vehicle avoided the collision. However, shortly thereafter, the defendant lined up his vehicle with police vehicle #1, a Slidell Police Department vehicle being driven by Officer Dupuy. At the last second, Officer Dupuy turned his vehicle to the shoulder and the vehicle the defendant was operating struck police vehicle #1 on the driver's side. The defendant did not stop after collision with police vehicle #1, but instead proceeded to the intersection of U.S. Highway 190 East and Lindberg Street, where he collided with police vehicle #2.[32]

## VI. Petitioner's Claim

Petitioner claims that he received ineffective assistance of counsel at trial. Petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000).

In Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel. A petitioner

---

[32] State v. Horne, No. 2002 KA 1904, at pp. 2-4 (La. App. 1st Cir. Mar. 28, 2003) (unpublished); State Rec., Vol. II of IV.

seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense.  Id. at 697.

To prevail on the deficiency prong of the Strickland test, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.  See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001).  "Counsel's performance is deficient if it falls below an objective standard of reasonableness."  Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998).  Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances.  See Strickland, 466 U.S. at 689.  "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"  Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690).  Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."  Crockett, 796 F.2d at 793.

If a court finds that petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong.  Strickland, 466 U.S. at 697.

In the instant case, petitioner argues that his trial counsel was ineffective in failing to properly object and move for a mistrial when the state introduced evidence of "other crimes," i.e. the alleged carjacking of the two women which led to the police chase.  When petitioner first asserted this claim in the state post-conviction proceedings, the district court denied relief, holding:

> The record in this matter establishes that petitioner has failed to prove grounds upon which relief shall be granted.  Louisiana Code of Criminal Procedure Article 930.3; Louisiana Code of Criminal Procedure Article 930.2.  Therefore, under Louisiana Code of Criminal Procedure Article 929, the relief sought in the petition must be denied.[33]

Petitioner's related writ applications were then denied without additional reasons assigned by the Louisiana First Circuit Court of Appeal[34] and by the Louisiana Supreme Court.[35]

Because a claim of ineffective assistance of counsel is a mixed question of law and fact, this Court must defer to the state court decision rejecting petitioner's claims unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); Moore v. Cockrell,

---

[33]  State Rec., Vol. III of IV, Order dated February 21, 2008.

[34]  State v. Horne, No. 2008 KW 0808 (La. App. 1st Cir. July 21, 2008) (unpublished); State Rec., Vol. III of IV.

[35]  State ex rel. Horne v. State, 9 So.3d 161 (La. 2009) (No. 2008-KH-2203); State Rec., Vol. III of IV.

313 F.3d 880, 881 (5th Cir. 2002).  For the following reasons, the Court finds that neither of those conditions is met in the instant case and that, therefore, this federal court should defer to the state court's ruling.

The issue of the carjacking evidence was first raised at trial by the prosecutor outside of the presence of the jury:

BY MR. HOFFSTADT [prosecutor]:

I assume it's in the nature of a motion in limine, Your Honor, but concerning the use of res gesta [sic] throughout this trial.  It's the State's position that Mr. Horne's taking of the vehicle, the chase, the aftermath of the chase is the only way to complete the story.  And it is such an inseparable part and so intertwined with this case that the story can't be told without it.

For example, if you don't tell the story about why Chris Bell and John LaPouble and the other deputies were involved in a pursuit with Mr. Horne, and the pursuit happened immediately after he took the car – happened immediately after they took the car, you can't tell the story.  If you don't talk about what they heard over the radio and about the investigation proceeding, immediately proceeding, where you talk about that he had taken the vehicle, that he was armed with a shotgun, that he was actually identified as the person in the vehicle, the rest of the story doesn't make any sense.  You have got to tell that part of the story to explain why Bell was behind him, while LaPouble was behind him, why the rest of them were involved in the chase.

We talked about the cases, in State V Darney, which is stated exactly that, the minute res gesta [sic] is admitted, to complete the story of the crime on trial by proving immediate contact that's happening near time and place.  It all talks about, it's res gesta [sic] when it is an inseparable part of the whole deed here.  And it says the evidence must be related and entwined with the charged offense to such an extent the State cannot actually present its case without reference to it.

There is no way to present this case and discuss why he was speeding down the road and crashed in two police cars without talking about why the pursuit was taking place in the first place.  They were chasing him because he had taken a vehicle and was

– 22 –

armed with a shotgun and there is no way to tell the story and get it out without mentioning that.

And we are talking about immediate time and place:  The vehicle's stolen, it is radioed over the police radio that they are looking for the blue Impala with Leon Horne inside it with a shotgun, and that's the entire reason why Bell and LaPouble and the rest of them were involved in the chase of Mr. Horne.  It is pure res gesta [sic].

It's very clear in every case that I've read dealing with this issue shows it res gesta [sic], time, place and a complete story, that you can't hear without it.  It is part of a continuous act.  He steals the car, the chase, and the run.  It all fits together, and it's all part of the same story, Your Honor.

BY THE COURT:

Mr. Liberto?

BY MR. LIBERTO [defense counsel]:

First objection, I was given absolutely no written notice prior to this moment verbally that they intend to do this.  I think that's a prejudicial error.

Number two, what the State says is simply not true.  I, in my opening statement, was going to say he was being chased by the police.  That's all this jury needs to know.  He is not charged with flight from an officer or anything involved with the police.  He is charged with aggravated criminal damage to property.  All he has to let known is the bare minimum, he was chased by the police.  If he doesn't say it, I'm going to say it.

They don't need to know what for.  It has no bearing whatsoever on the charge of aggravated criminal damage to property.

BY THE COURT:

In regards to notice, the Court finds that the State was not required to give notice in this instance.  There's cases to the effect that even an exculpatory statement given orally out of the res gesta [sic] are not necessarily required to be noticed under the provision of Code of Criminal Procedure Article 776, or one of those numbers.  What is the number?

BY MR. HOFFSTADT:

    I believe it is 770.

BY THE COURT:

    770.  There's some type of notice.  You know, it goes by that notice, the number is assigned to it.  And the purpose, I guess of Mr. Liberto's objection is, the prejudicial effect it would have, and I can understand the position of the defense in urging that objection.

    However, there are cases, to which this Court is familiar, and unfortunately I have researched that and read that.  It was handed to me on a legal sheet and I left it in chambers, which is a block away but, suffice it to say, that the cases hold that if in a chain of events, if you will, that lead up to the immediate arrest, an occurrence of the offense for which the defendant is charged, that mention of other criminal activity can be brought out in the trial of the matter.

    There are cases also to the effect, that say that the dispatch given to a police officer or unit concerning an alleged criminal activity can be entered into evidence as an exception to the hearsay. It's the means by which the officers are alerted.  And so, in light of that, the Court is going to overrule Mr. Liberto's objection.

BY MR. LIBERTO:

    I want to object to the Court's ruling and put further on the record that I am also being denied the opportunity to present witnesses for the defense, because if we're going to bring in all those other things, I want the man whose car it was to come say it was stolen, I want the girl who was supposedly car jacked to come here and say she was car jacked.  If we are going to let it in, I want witnesses to refute.

BY THE COURT:

    Overruled.

BY MR. LIBERTO:

    Not my objection for the record.

BY THE COURT:

The ruling of the Court has been made.

BY MR. HOFFSTADT:

Your Honor, if I could, we are dealing with the information the officer had, not necessarily the truth of the information, but the information given to him.

BY THE COURT:

Why are you responding in any way whatsoever except for the record. I have overruled the objection.

BY MR. HOFFSTADT:

I profusely apologize, Your Honor.[36]

In his federal application, petitioner contends that his counsel was ineffective for failing to object on the grounds that the prosecutor was misapplying the *res gestae* doctrine. That contention fails both as a matter of law and of fact.

First, contrary to petitioner's underlying legal contention, the evidence regarding the report of a carjacking was properly admissible pursuant to the *res gestae* doctrine. The Louisiana Supreme Court has explained the admissibility of such evidence in the state courts, noting:

This Court has long approved of the introduction of other crimes evidence, both under the provisions of former R.S. 15:448 relating to *res gestae* evidence and as a matter of integral act evidence under La.C.E. art. 404(B), "when it is related and intertwined with the charged offense to such an extent that the state could not have accurately presented its case without reference to it." State v. Brewington, 601 So.2d 656, 657 (La. 1992). This doctrine encompasses "not only spontaneous utterances and declarations made before and after commission of the crime but also testimony of witnesses and police officers pertaining to what they heard or

_____

[36] State Rec. Vol. II of IV, transcript of October 13, 1998, pp. 7-11.

observed before, during, or after the commission of the crime if the continuous chain of events is evident under the circumstances." <u>State v. Molinario</u>, 383 So.2d 345, 350 (La. 1980).  We have required a close connexity between the charged and uncharged conduct to insure that "the purpose served by admission of other crimes evidence is not to depict the defendant as a bad man, but rather to complete the story of the crime on trial by proving its immediate context of happenings near in time and place." <u>State v. Haarala</u>, 398 So.2d 1093, 1098 (La. 1981) (emphasis added); <u>see also</u> 1 McCormick on Evidence, § 190, p. 799 (4th ed., John William Strong, ed., 1992) (other crimes evidence may be admissible "[t]o complete the story of the crime on trial by placing it in the context of nearby and nearly contemporaneous happenings.") (footnote omitted).  The *res geaste* [sic] or integral act doctrine thus "reflects the fact that making a case with testimony and tangible things not only satisfies the formal definition of an offense, but tells a colorful story with descriptive richness." <u>Old Chief v. United States</u>, 519 U.S. 172, 186, 117 S.Ct. 644, 653, 136 L.Ed.2d 574 (1997).  *The test of integral act evidence is therefore not simply whether the state might somehow structure its case to avoid any mention of the uncharged act or conduct but whether doing so would deprive its case of narrative momentum and cohesiveness, "with power not only to support conclusions but to sustain the willingness of jurors to draw the inferences, whatever they may be, necessary to reach an honest verdict."* <u>Id</u>.

<u>State v. Colomb</u>, 747 So.2d 1074, 1075-76 (La. 1999) (emphasis added).  Evidence, such as that at issue here, which is necessary to explain the sequence of events to the jury is relevant and admissible under the *res gestae* doctrine.  <u>See, e.g.</u>, <u>State v. Senegal</u>, 19 So.3d 623, 627 (La. App. 3rd Cir. 2009); <u>State v. Clements</u>, 519 So.2d 236, 238 (La. App. 5th Cir. 1988); <u>State v. Johnson</u>, 440 So.2d 838, 842 (La. App. 2nd Cir. 1983).  Therefore, *if* defense counsel had failed to object to an alleged misapplication of the *res gestae* doctrine, it would be of no consequence because the objection would have been meritless.  Counsel is not ineffective for failing to lodge meritless objections.  <u>Clark v. Collins</u>, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite."); <u>see also</u> <u>United States v. Kimler</u>, 167 F.3d 889, 893

(5th Cir. 1999) ("An attorney's failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.").[37]

Second, in any event, the Court also rejects petitioner's underlying factual allegation that defense counsel failed to make such an objection. Although defense counsel did not reference the *res gestae* doctrine by name, it is apparent from his objections that he was arguing that the doctrine was being misapplied. As is clear from the above-quoted exchange from the transcript, defense counsel argued that information concerning the alleged carjacking was unnecessary and the Court should instead allow only the information that petitioner was being chased by police. That argument, fairly construed, is one that the *res gestae* doctrine was being applied too expansively in order to allow admission of unduly prejudicial details unnecessary for the jurors to have a full understanding of the precipitating events.

In summary, petitioner has not demonstrated that the state court's decision on his ineffective assistance of counsel claim was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. Therefore, applying the AEDPA's deferential standard, this Court should therefore reject that claim.

---

[37]  To the extent that petitioner is claiming that counsel was ineffective for failing to move for a mistrial on this same basis, that claim also has no merit. The trial judge had already denied the objection and ruled the evidence admissible; therefore, it would have been futile to then move for a mistrial based on the admission of such evidence. "Counsel cannot be deficient for failing to press a frivolous point." Sones v. Hargett, 61 F.3d 410, 415 n.5 (5th Cir. 1995); see also Williams v. Cain, Civ. Action Nos. 06-0224 and 06-0344, 2009 WL 1269282, at *12 (E.D. La. May 7, 2009), aff'd, No. 09-30470, 2009 WL 5183954 (5th Cir. Dec. 29, 2009).

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** petitioner's motion to amend his petition and stay these proceedings, Rec. Doc. 9, be **DENIED**.

**IT IS FURTHER RECOMMENDED** that the petition for federal *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[38]

New Orleans, Louisiana, this twenty-fourth day of February, 2010.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[38] <u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.